243 So.2d 806

**STATE of Louisiana**

**v.**

**Alonzo EDWARDS.**

**No. 50627.**

Jan. 18, 1971.

Rehearing Denied Feb. 24, 1971.

Lloyd F. Love, Ferriday, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen.. William P. Schuler, Asst. Atty. Gen., W. C. Falkenheiner, Dist. Atty., George Griffing, Asst. Dist. Atty., for plaintiff-appellee.

BARHAM, Justice.

The defendant Alonzo Edwards was charged with simple burglary, tried, found guilty, and sentenced to six years in the state penitentiary. This appeal is founded upon four perfected bills of exception.

The main thrust of two of the bills of exception and of this appeal is directed at the defendant's alleged mental incapacity. The defendant pleaded not guilty and not guilty by reason of insanity, and additionally his counsel filed a motion for an examination and hearing on his mental capacity to proceed. C.Cr.P. Arts. 641 et seq. The contradictory hearing on the motion consisted of the written report of two psychiatrists, Dr. Roy D. Hill and Dr. Hugh A. King, Jr., who had examined the defendant at the Central Louisiana State Hospital; of the testimony of Dr. William L. Kirkpatrick, a qualified psychiatrist, and Mrs. Harry Raila, counselor, both also of Central Louisiana State Hospital, and of the defendant's mother, Mrs. Cariola Edwards. The judge overruled the plea of present insanity and refused to stay the proceedings, and Bill of Exception No. 1 was reserved. The judge's reasons for this ruling give a concise statement of the findings made under the evidence. Our appreciation of that evidence agrees basically with his findings.

At the time of the offense the defendant was about 18 years of age. All three psychiatrists, on the basis of psychological testing including a test for intelligent quotient, found the defendant to be a moderately retarded individual with an I.Q. of 59

and a correlated mental age of approximately eight or nine years. None of the doctors found him to be psychotic: He was oriented, in full contact with reality, able to know what was going on around him and to recognize fact from fantasy. Two of the psychiatrists concluded that the defendant understood the charge against him, could testify in his own behalf, and could assist counsel in his defense. The other psychiatrist, Dr. Kirkpatrick, disagreed with these findings only in degree. He was of the opinion that the defendant could assist counsel, understand the general nature of the proceedings, and testify, but that all of this would be done under the limitation or circumscription of the limited intelligence possessed by an eight- or nine-year-old.

The defense relies upon State v. Augustine, 252 La. 983, 215 So.2d 634, as authority for a holding contrary to that of the trial judge. Both Augustine and this defendant had intelligence quotients in the high 50's. Both had mental ages in the seven-to-ten-year-old range. However, this is the point of departure factually in the two cases. Augustine had "psychotic episodes and auditory hallucinations, and was paranoid". He was indifferent during the examination, had very short-span periods of attention, was totally indifferent to his legal situation, and even slept through part of the proceedings. He could not recall the essential circumstances connected with the crime, and was unable to relate these to his attorney or testify in his defense. No such symptoms were exhibited by the defendant Edwards. The evidence simply establishes him to be moderately retarded mentally, exhibiting (through less than perfect testing procedures) a mental capacity less than that of most persons of his age.

The correct law is stated in the Augustine case and relied upon by the trial judge here: "Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity. State v. Chinn, 229 La. 984, 87 So.2d 315; State v. Brodes, 160 La. 340, 107 So. 131. * * *" Our test for mental incapacity to proceed is whether the defendant "presently lacks the capacity to understand the proceedings against him or to assist in his defense". C.Cr.P. Art. 641. Sanity, including mental capacity to proceed, is presumed. We are of the opinion that the trial judge was correct in determining that this defendant possessed the legal mental capacity for proceeding with trial.

A motion to suppress a confession was apparently heard out of the presence of the jury during the trial of the cause, and Bill of Exception No. 2 was reserved to its overruling. The basis of the motion was that the defendant was mentally incapable of waiving his constitutional protections before giving a statement. Accord-

ing to the trial judge and to argument before us, defense counsel has conceded that full and adequate Miranda warnings were given, and relies merely upon the contention that the defendant did not possess the mental faculties to understand these warnings or to knowingly waive his constitutional rights. The evidence heard on this motion is not attached.

This bill presents nothing for our consideration unless we review it in light of the information gained from evidence adduced at the contradictory hearing on the motion to stay the proceedings for lack of mental capacity. That evidence is not sufficient to sustain the defendant's contention. If evidence had been adduced of all the circumstances under which the statement was given by the defendant, the defense could conceivably have established that he did not in fact understand the warnings, that the officers were cognizant of this, and that the statement could not be treated as a free and voluntary confession. No such evidence, however, is presented for our review, and we cannot supply by speculation that which is required. Moderate retardation and a low intelligence quotient do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession.

▮▮ Bill of Exception No. 3 was reserved to the introduction of certain physical evidence which had been the subject of an unsuccessful motion to suppress on the ground that it constituted the fruits of an illegal search and seizure. The testimony attached to this bill supports the ruling of the trial court. After the defendant escaped from arrest, he was followed by the police in hot pursuit to his mother's house, and the officers were invited by the mother to search her premises for the defendant. In the course of this search there were in plain view suitcases and other evidence which were products of the burglary for which the defendant was tried. The seizure of this evidence under these circumstances was not prohibited.

▮▮ The final bill of exception was reserved to the judge's ruling that the State might call as a witness Alfred Clyde Hines, who had remained in the courtroom after sequestration during a short period of the trial. The judge gives a detailed statement of fact in his per curiam. The witnesses including Hines, a young boy, had been placed under sequestration at the beginning of the trial and had left the courtroom together. After a recess this boy, through a misunderstanding of the significance of the order of sequestration, came back into the courtroom without the knowledge of the judge, the district attorney, or the bailiff. As soon as his presence was noticed, he was removed. The per curiam relates that during the time he was in the courtroom he heard only two or

three questions asked by the district attorney of the town marshal which were merely routine and not germane to the defendant's guilt or innocence. Under these facts the trial judge exercised sound discretion in allowing this witness to testify, and his ruling was not prejudicial to the defendant. See C.Cr.P. Art. 764.

For the reasons given the conviction and sentence are affirmed.

TATE, Justice (concurring).

The uncontradicted medical and other testimony shows that the defendant had the intelligence and personality of a boy of eight to nine years of age. The only psychiatrist who testified in person felt that he could not intelligently assist counsel try the case, and that, as with most eight year olds, he had hazy concepts about the right and wrong of taking things that belonged to other people. The other two doctors, who testified by report, felt that he was mentally retarded but that he could assist in his defense competently.

It is difficult for me to believe that an eight-year old child, or a childlike older boy with a mind of an eight-year old, could in fact intelligently assist in his own defense. However, this court has consistently held otherwise, see e. g., State v. Chinn, 229 La. 984, 87 So.2d 315 (1956), absent mental distortions impairing rational understanding, State v. Augustine, 252 La.

983, 215 So.2d 634 (1968). Until this court or the legislature re-examines the question, I will concur.