**UNITED STATES of America,**

**v.**

**Guido PENOSI, William Castaldi, a/k/a "Willie", Robert Maher, a/k/a "Bob" and Frank Zazza, Defendants.**

**No. 82 Cr. 529 (MEL).**

United States District Court,
S. D. New York.

Oct. 5, 1982.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City (Benito Romano, Asst. U. S. Atty., New York City, of counsel), for United States.

Bernstein, Hurley, Premisler & Shank, Mineola (Michael M. Premisler, Mineola, N. Y.), for defendant Frank Zazza.

---

LASKER, District Judge.

The defendant Frank Zazza moves to suppress certain statements obtained from him, on the grounds that they were obtained in violation of his *Miranda* rights. The facts, established at an evidentiary hearing, are not essentially in dispute.

Zazza was arrested at his home July 16, 1982 by three DEA agents who obtained entry to his apartment by knocking on his door and announcing that they had just hit Zazza's car in the parking lot. When Zazza opened the door, the agents entered with guns drawn and announced that they were federal agents. After Zazza, who apparently panicked at first, calmed down somewhat, one of the agents read him his rights. Agent Christopher Giovino told Zazza that the agents had been following Zazza for some time and that they knew he was part of a heroin conspiracy, and asked him if he was willing to cooperate, since the government was not really after him but other participants in the conspiracy. Zazza readily agreed to cooperate.

On the way to the DEA office, Zazza rode with Agent Giovino and another agent. During the ride, while questioning the agents on the nature of the charges and other matters, Zazza stated that he would like to speak to his attorney. Zazza's testimony on this point was as follows:

> A (Zazza) ... I made mention to Mr. Giovino that I wanted to cooperate, I also wanted to speak to my attorney.
>
> Q (Zazza's attorney) Tell us exactly what you said to him and where that was.
>
> A It was in the car. And I can't say exactly [what words were used], but I know I specifically said that I would like to speak to my attorney and I will cooperate if you can do both things. (Tr. at 13).

Zazza subsequently explained in his testimony that he did not add the statement "if you can do both things" when he was speaking to the agents in the car, but that his "thinking process" was that he wanted both to cooperate and to speak with his attorney, if the two were not incompatible. Thereafter, exchanges between Zazza and various DEA agents continued both in the car and after Zazza arrived at the DEA office. Zazza was reminded several times that other individuals were being arrested as part of the same conspiracy, that the other individuals were the chief targets of the investigation, and that it would be to his advantage to cooperate. When Zazza finally called his attorney from the DEA office, the statements at issue here had already been given. Zazza now contends that the statements cannot be introduced against him at trial because they were obtained after he invoked his right to counsel, and that the Government has not met its burden of showing that he effectively waived his right to counsel after invoking it.

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court emphasized that when an accused has invoked his right to counsel, special safeguards must be observed before subsequent statements to the authorities will be deemed the product of a knowing and intelligent relinquishment of the right to counsel. The court stated: "[I]t is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Id.* at 485, 101 S.Ct. at 1885.

Here, Zazza's testimony that on the way to the DEA office he stated his desire to speak with his attorney is not directly disputed. Agent Giovino testified that he recalled some conversation in Zazza's apartment about whether Zazza would need to have an attorney appointed, but could not recall what answer Zazza gave. (Tr. at 65–67). When asked whether there was any conversation in the car about an attorney, Giovino answered "[n]ot that I can recall." (Tr. at 69). Giovino's testimony on these points, in sum, was "to the best of [his] recollection," (Tr. at 77), and did not amount to a refutation of Zazza's credible and specific testimony on this issue.

Under the Supreme Court's rulings, an accused's statement that he wishes to speak to his attorney is a "significant

event," and the authorities may not simply pass over such a statement because the accused does not press the point. *Edwards, supra,* 451 U.S. 485, 101 S.Ct. 1885; *see also United States v. Burns,* 2d Cir., 684 F.2d 1066 (1982) (*Edwards* is violated when an accused requests an attorney and one is not immediately provided, but instead the Assistant United States Attorney recommences questioning the accused about his background the following day after providing renewed *Miranda* warnings); *cf. United States v. Gordon,* 655 F.2d 478, 485–86 (2d Cir. 1981) (statements should not be suppressed when court is satisfied that the accused initiated the subsequent communications and when in light of all the circumstances it is clear that the accused voluntarily and knowingly waived his previously invoked rights).

Here, Zazza stated that he wished to speak with his attorney, and the government has simply failed to show what response, if any, the DEA agents may have made to Zazza's statement. Moreover, if the agents were unsure whether Zazza's statement, coupled with his continued indications that he wanted to cooperate, amounted to an actual invocation of the right to have counsel present, it was up to the DEA agents to clarify the matter. In this, we agree with Judge Leval's opinion in *United States v. Chansriharaj,* 446 F.Supp. 107 (S.D.N.Y.1978). There, the accused, when asked through a translator if he understood his right to have an attorney present during the interview, replied "I have a friend Mr. Mori who is trying to arrange a lawyer." Although the accused stated later in the interview that he understood his rights, the district court held that the accused's statement could well have indicated a desire to have counsel present, and that it was the government's duty to clarify the matter before continuing any questioning. In this case, as in that one, "[w]hat was called for was some form of inquiry designed to clarify the defendant's intentions. After the defendant's ambiguous remarks, only with the help of such a clarification could the government sustain its burden under *Miranda* of showing waiver." *Id.* at 109.

It is clear that Zazza perceived it to be to his advantage to cooperate with the DEA agents, even after he had said that he would like to speak to his attorney. But the burden of showing that *Miranda* rights were validly waived is on the government. *See, e.g., Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980) (per curiam); *United States v. Lord,* 565 F.2d 831 (2d Cir. 1977). That burden is especially great when, as here, the accused has actually said that he would like to speak to counsel. *Edwards v. Arizona, supra.* The government has not sustained its burden, and accordingly the statements cannot be admitted into evidence at Zazza's trial.

It is so ordered.