Filed 5/21/15  P. v. Raspberry CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B253399 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA085941) |
| v. | |
| JIMMY RASPBERRY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Michael D. Carter, Judge.  Affirmed.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Russell A. Lehman, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Jimmy Raspberry (defendant) guilty of armed robbery.  On appeal, defendant contends that he received ineffective assistance of counsel because his trial attorney failed to make a pretrial motion to suppress his statements to the police during a custodial interrogation.  According to defendant, the record of his interrogation shows that he did not understand his right to appointed counsel and, therefore, he could not and did not expressly or impliedly waive his right against self-incrimination under *Miranda*.[1]  Defendant also requests that we independently review the transcripts of the in camera hearings on his two *Pitchess*[2] motions to ensure that the trial court ordered that all discoverable materials were produced.

We hold that because the record shows that defendant understood his right to appointed counsel and, thereafter, impliedly waived by his conduct his right against self-incrimination, his trial counsel's failure to move to suppress his statements to the police did not constitute ineffective assistance of counsel.  We also conclude, based on our independent review of the transcripts of the hearings on the two *Pitchess* motions, that the trial court ordered all discoverable materials to be produced.

## FACTUAL BACKGROUND[3]

On December 5, 2010, Gloria Goldbaum was working as an assistant manager at a Burger King restaurant on Victory Boulevard in Burbank.  She was in charge of the drive

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[2]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[3]     Because defendant's contentions on appeal—which are based on certain pretrial matters—do not require an analysis of the evidence introduced at trial, we briefly summarize here relevant portions of the trial evidence to provide context for the discussion below.

through window and there were four other employees working with her that night. At approximately 9:30 p.m., defendant, wearing a grey, hooded sweatshirt zipped up to cover his mouth, entered the Burger King and asked for the manager. Goldbaum, who could see part of defendant's face, asked defendant if she could help him. Defendant pointed a handgun at Goldbaum, told her it was a robbery, and demanded money. Goldbaum went to the office to retrieve money while defendant remained on the customer side of the counter. In the office, Goldbaum hid her purse and some money from the desk in a trash can and then heard defendant call her.

When Goldbaum returned to defendant's location, he demanded that she "Let [him] in." Defendant followed Goldbaum back to the office, demanded that she give him money from a register and a safe, and Goldbaum complied by placing money from the register and safe in a blue backpack the defendant had brought into the office. Goldbaum remained behind in the office as defendant left with the money in his backpack.

Goldbaum described defendant's appearance, including his clothing, to a responding police officer. An officer then drove her to a location where defendant had been detained by another officer. At defendant's location, Goldbaum told the officers that defendant was wearing the same clothing as the man who robbed her and that he appeared to be the man who robbed her. In the area where defendant was first seen by other officers, those officers found the blue backpack defendant had used in the robbery. The officers found a handgun on top of the backpack and inside they found the money Goldbaum had placed in it during the robbery.

## PROCEDURAL BACKGROUND

In an information, the Los Angeles County District Attorney charged defendant with robbery in violation of Penal Code section 211.[4] The District Attorney alleged that defendant personally used a firearm during the commission of the robbery within the

---

[4]     All further statutory references are to the Penal Code, unless otherwise indicated.

3

meaning of section 12022.53, subdivision (b). Defendant pleaded not guilty and denied the personal use of a firearm allegation.

Defendant filed an initial *Pitchess* motion and, following an in camera hearing, the trial court ordered that discoverable evidence be provided to defendant. Defendant then filed a subsequent *Pitchess* motion and, following another in camera hearing, the trial court ordered that additional discoverable evidence be provided to defendant.

Following trial, the jury found defendant guilty as charged on the robbery count and found the personal use of a firearm allegation true. The trial court sentenced defendant to an aggregate sentence of 13 years, comprised of a three-year middle term on the robbery count, plus a consecutive 10-year term pursuant to section 12022.53, subdivision (b). Defendant filed a timely notice of appeal.

## DISCUSSION

### A. Ineffective Assistance of Counsel

Defendant contends that he received ineffective assistance of counsel because his trial counsel failed to move to suppress statements he made to the police during a custodial interrogation. According to defendant, the record of his interrogation demonstrates that he did not understand his right to appointed counsel and that he could not and did not expressly or impliedly waive his right against self-incrimination.

#### 1. Background

At the police station, defendant participated in an interview with two investigating officers which was videotaped and played for the jury. At the beginning of the interview, defendant had the following exchange with one of the officers about his right against self-incrimination. "[Defendant]: She told me I was getting shipped to county, though, bro. [Officer]: Maybe. I don't know about that. Your first name's Jimmy, right? [Defendant]: Yes sir. [Officer]: Okay, I'm gonna read you something real quick, alright? You have the right to remain silent. Do you understand? [Defendant]: ---

4

[Officer]: You have to say yes. [Defendant]: Yes. [Officer]: Anything you say may be, may be used against you in court. Do you understand? [Defendant]: Yes. *** [Officer]: *** You have the right to have an attorney before and during questioning. Do you understand? [Defendant]: Yes. [Officer]: If you cannot afford an attorney one will be appointed for you before questioning if you wish. Do you understand? [Defendant]: *** [Officer]: Yeah? Or yes? [Defendant]: Wasn't I supposed to get this read, like, before I got arrested, or? [Officer]: [shakes head] Un-uh. [Defendant]: No? [Officer]: Un-uh. [Defendant]: So this whole time I thought I was being detained, ***. [Officer]: What's that? [Defendant]: This whole time I just thought I was being detained, and now this lady's telling me I'm getting shipped to county tonight. [Officer]: Well, first of all, let me ask you a couple of questions here, and I'll explain to you what's going on. I mean . . . How long have you lived in Burbank? You said all your life? [Defendant]: Pretty much. [Officer]: And where do you work at? [Defendant]: 3-D Packaging. . . ."

## 2. *Legal Principles*

### (a) Ineffective Assistance of Counsel

The legal principles governing claims of ineffective assistance of counsel are well established. "A criminal defendant's federal and state constitutional rights to counsel (U.S. Const., 6th amend.; Cal. Const., art. I, § 15) include the right to *effective* legal assistance. When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an

5

*appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. (E.g., *People v. Vines* (2011) 51 Cal.4th 830, 875-876 [124 Cal.Rptr.3d 830, 251 P.3d 943] (*Vines*); *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [62 Cal.Rptr.2d 437, 933 P.2d 1134].)" (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

(b)     *Miranda* Waiver

To prevail on his claim of ineffective assistance of counsel, defendant must demonstrate his trial counsel's inadequacy by showing that his statements during the custodial interrogation were inadmissible because he did not expressly or impliedly waive his right against self-incrimination under *Miranda, supra,* 384 U.S. 346. "Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement. [*North Carolina v.* [*Butler* (1979)] 441 U.S. [369,] 373 [99 S.Ct. 1755, 60 L.Ed.2d 286] (*Butler*). The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' [*Moran v.*] *Burbine* [(1986) 475 U.S. 412,] 421 [106 S.Ct. 1135, 89 L.Ed.2d 410 (*Burbine*)]." (*Berghuis v. Thomkins* (2010) 560 U.S. 370, 382-383 (*Berghuis*).)

"The prosecution . . . does not need to show that a waiver of *Miranda* rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence. *Butler, supra,* 441 U.S., at 376. *Butler* made clear that a waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled

6

with an understanding of his rights and a course of conduct indicating waiver.' [*Butler, supra,*] 441 U.S., at 373. [¶] If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights. *Miranda*, *supra*, [384 U.S.] at 475 [86 S.Ct. 1602, 16 L.Ed.2d 694]. The prosecution must make the additional showing that the accused understood these rights. See *Colorado v. Spring* (1987) 479 U.S. 564, 573-575 [107 S.Ct. 851, 93 L.Ed.2d 954]; [*Connecticut v.*] *Barrett* [(1987) 479 U.S. 523,] 530 [107 S.Ct. 828, 93 L.Ed.2d 920]; *Burbine*, [*supra,*] 475 U.S., at 421-422. Cf. *Tague* v. *Louisiana* (1980) 444 U.S. 469, 471 [100 S.Ct. 652, 62 L.Ed.2d 622] (*per curiam*) (no evidence that accused understood his *Miranda* rights); *Carnley v. Cochran* (1962) 369 U.S. 506, 516 [82 S.Ct. 884, 8 L.Ed.2d 70] (government could not show that accused 'understandingly' waived his right to counsel in light of 'silent record'). Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." (*Berghuis, supra*, 560 U.S. at p. 384.)

"As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford. See, *e.g., Butler*, *supra*, at 372-376; [*Colorado v.*] *Connelly* [(1986) 479 U.S. 157,] 169-170 [107 S.Ct. 515, 93 L.Ed.2d 473] ('There is obviously no reason to require more in the way of a "voluntariness" inquiry in the *Miranda* waiver context than in the [due process] confession context'). The Court's cases have recognized that a waiver of *Miranda* rights need only meet the standard of *Johnson v. Zerbst* (1938) 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461]. See *Butler*, *supra*, [441 U.S.] at 374-375; *Miranda*, *supra*, [384 U.S.] at 475-476 (applying *Zerbst* standard of intentional relinquishment of a known right). As *Butler* recognized, 441 U.S., at 375-376, *Miranda* rights can therefore be waived through means less formal than a typical waiver on the record in a courtroom, cf. Fed. Rule Crim. Proc. 11, given the practical constraints and necessities of interrogation and the fact that *Miranda*'s main protection lies in advising defendants of their rights, see

7

*Davis* [*v. United States* (1994)] 512 U.S. [452,] 460 [114 S.Ct. 2350, 129 L.Ed.2d 362]; *Burbine*, [*supra*,] 475 U.S., at 427." (*Berghuis, supra*, 560 U.S. at p. 385.)

### 3. Analysis

Defendant contends that "the record does not support that [defendant] heard, let alone comprehended, that he had a right to appointed counsel." Therefore, defendant argues, he could not have impliedly waived a right he did not understand.

Contrary to defendant's assertion, the record shows that the interrogating officer gave defendant each of the advisements required under *Miranda, supra,* 384 U.S. 436. The officer advised defendant that he had the right to remain silent; that anything defendant said to the officer could be used against defendant in court; that he had a right to have an attorney present both before and during questioning; and that if defendant could not afford an attorney, one would be appointed for defendant before questioning. As to the first three advisements, defendant unequivocally stated that he understood them. As to the fourth advisement, which was clear and straightforward, defendant initially gave an unintelligible response to which the officer replied, "Yeah. Or yes? Although defendant did not then expressly state that he understood the fourth advisement, his subsequent response—asking whether the advisement concerning appointed counsel should have been given earlier—suggested that he also understood his right to appointed counsel, but objected to the timing of the advisement about it; and nothing defendant said thereafter suggested otherwise. Given that it is undisputed defendant understood his right to an attorney, there is nothing in the record to indicate that he did not understand the plainly worded advisement about his additional right to have counsel appointed for him.

Following the exchange between the interrogating officer and defendant concerning the fourth advisement, defendant immediately began to respond voluntarily to questions from the officer without objection or hesitation. His conduct in doing so, after having been clearly advised of his *Miranda* rights, demonstrated that he understood those rights, including the right to appointed counsel, and voluntarily waived them. That

8

uncoerced conduct was sufficient under the foregoing authorities to establish an implied waiver of his right against self-incrimination.

Because the record of defendant's interrogation supported a reasonable inference that he had knowingly and voluntarily waived his *Miranda* rights, his trial counsel's decision not to move to suppress the statements he made to the police during that interrogation, on the record before us, did not fall below an objective standard of reasonableness. Thus, defendant has failed to satisfy on appeal the initial requirement of his claim of ineffective assistance of counsel, i.e., the burden of establishing his trial counsel's inadequacy. We therefore reject that claim on appeal.

### B.     Transcripts of In Camera Hearings

Defendant requests that we independently review the transcripts of the in camera hearings on his two *Pitchess* motions, and the Attorney General does not object to that request. When an appellant requests such an independent review, we are empowered to review the transcripts to ensure that all discoverable materials were produced. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1232.) We review a trial court's ruling on a *Pitchess* motion for abuse of discretion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

We have reviewed the two sealed transcripts of the in camera hearings in question and conclude that the trial court ordered the production of all discoverable materials. We therefore affirm the trial court's orders made following the in camera hearings on the two *Pitchess* motions.

## DISPOSITION

The judgment of conviction and the trial court's orders on the two *Pitchess* motions are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, Acting P. J.

We concur:

KRIEGLER, J.

GOODMAN, J.[*]

---

[*] Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.